IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:22-cr-179-MHT-JTA |
| | ) | |
| ERIC J. SURLS | ) | (WO) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This cause is before the court on Defendant Eric J. Surl's motion to suppress in which he seeks to suppress the firearm that law enforcement seized from a vehicle on October 28, 2021. (Doc. No. 19.) After due consideration of the parties' arguments, evidence and applicable law, the undersigned concludes that the motion to suppress is due to be denied.

**I.  PROCEDURAL HISTORY**

Surls is charged in this case with one count of possession of a firearm by a convicted person in violation of Title 18, United States Code, Section 922(g)(1). (Doc. No. 1.) Surls entered a plea of not guilty during his arraignment. (Doc. No. 14.)

Surls filed his motion to suppress evidence on January 5, 2023. (Doc. No. 19.) The Government filed a response to the motion (Doc. No. 23), and Surls filed a reply (Doc. No. 31). The undersigned conducted an evidentiary hearing on the motion on February 7, 2023. (Doc. No. 37, Transcript of Evidentiary Hearing.) Hence, the motion is ripe for review.

## II. FINDINGS OF FACT[1]

During the evidentiary hearing, the court heard testimony from Ira Brown, Task Force Officer with the Gulf Coast Regional Fugitive Task Force ("GCRFTF"), and Donnie Surrett,[2] Senior Inspector with the United States Marshals Service ("USMS"). (Doc. No. 37, Tr. at 2, 4-5, 26.) The testimony and evidence adduced at the hearing establish the following facts.[3]

On October 28, 2021, members of the GCRFTF went to the Courtyard Apartments in Montgomery, to locate Surls. The Alabama Department of Corrections had issued an arrest warrant for Surls for a parole violation and requested the GCRFTF's assistance in locating and arresting Surls. He was on parole for a robbery conviction.[4]

Brown testified that Surls was known to drive a blue Malibu in the area of Courtyard Apartments. When Brown went to the Courtyard Apartments on October 28, he observed a parked blue Malibu matching the description of the vehicle driven by Surls. Brown pulled to the rear of the blue Malibu, verified the tag, and observed a person sitting in the driver

---

[1] The undersigned reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citation omitted).

[2] Surrett is a 29-year veteran in law enforcement. He has worked for the USMS for over 12 years. Before that, he ran the narcotics unit at the Lee County Sheriff's Office and was a military police officer. As a law enforcement officer, he has seen "hundreds if not thousands" of firearms and can identify some firearms. (Doc. No. 37, Tr. at 32.)

[3] The undersigned finds the testimony of both witnesses to be credible.

[4] Surrett testified that on the day of Surls' arrest, he was helping to execute an arrest warrant on Surls for a parole violation, he knew the underlying charge was a robbery charge – which is a felony – and he knew it was illegal for felons to possess a firearm. (Doc. No. 37, Tr. at 34-35.)

2

seat that matched a picture of Surls. Brown then parked his vehicle in a location where he could observe the blue Malibu and requested additional officers.

Less than 20 minutes later, the additional officers arrived. Surrett was one of those officers. Surrett testified that his task was to "contain" the blue Malibu by placing the front end of his vehicle "nose to nose" with the front end of the blue Malibu.[5] When Surrett arrived, he observed a male in the driver seat of the blue Malibu and the male was looking down. Surrett positioned his vehicle directly in front of the blue Malibu,[6] initiated the blue lights on his vehicle, and drove the front end of his vehicle to hit the front end of the blue Malibu. Surls then exited the blue Malibu on the driver side and ran, leaving the driver door open on the blue Malibu.

After Surls fled, Surrett exited his vehicle, walked to the passenger side of the blue Malibu, and then walked around the Malibu to the driver side. No occupants were in the blue Malibu. Surrett looked into the blue Malibu from the driver side[7] and observed a firearm[8] located beside the driver seat, between the driver seat and the console. Surrett identified the item between the driver seat and the console as a firearm by three

---

[5] (Doc. No. 37, Tr. at 27.)

[6] The blue Malibu was "backed" into the parking space. (Doc. No. 37, Tr. at 28.)

[7] Surrett testified that he did not have to bend down in order to look inside the blue Malibu from the driver door. (Doc. No. 37, Tr. at 40.)

[8] Surrett testified that he "saw a scale, a blunt, and a pistol that was beside the driver's seat, between the driver's seat and the console." (Doc. No. 37, Tr. at 30.)

3

characteristics: the pinkie extension on the magazine, the rectangular-shaped rear sight, and the Ruger emblem on the right side.[9]

Surls was apprehended several apartments down from the blue Malibu by Brown and two other officers. Brown was informed by Surrett through radio of the firearm in the blue Malibu. Brown placed Surls in custody and came to the blue Malibu. He looked inside the blue Malibu through the open driver door and observed the firearm[10] between the driver seat and center console.[11]

According to both Brown and Surrett, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") came to the scene. ATF agents searched the blue Malibu and seized the firearm.

### III.    DISCUSSION

Surls contends in his motion that the search of the vehicle was in violation of the Fourth Amendment because there was no justification for a warrantless search. Surls argues the search was not a search incident to arrest, not completed for officer safety, and was not an inventory search following impoundment. He also contends that he was being arrested for a parole violation and there was no reason to believe that evidence of any crime was in the vehicle.

---

[9] (Doc. No. 37, Tr. at 32-33.)

[10] Brown testified that "in plain view was the weapon, what appeared to be a hand-rolled cigarette, and the scale." (Doc. No. 37, Tr. at 21.) Brown further testified that he did not have to bend down to look into the blue Malibu from the driver door. (*Id*. at 25.)

[11] The parties admitted photographs of the blue Malibu as exhibits in the evidentiary hearing. The exhibits support the testimony of Brown and Surrett, and depict the firearm between the driver seat and the center console.

In response, the Government argues that Surls had no reasonable expectation of privacy in the firearm because it was plainly viewable from the outside of the vehicle through the open driver door. The Government also argues that the automobile exception to the warrant requirement is applicable in this case. The Government concludes the firearm was legally obtained.[12]

In his reply, Surls disputes that the plain view doctrine applies in this case. However, he concedes that the automobile exception[13] applies to the search of the vehicle, if the Government proved the firearm was in plain view.[14]

The only issue before the court is whether the plain view doctrine is applicable in this case. The undersigned concludes that it is.

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Whren v. United States*, 517 U.S. 806, 809 (1996). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). A "seizure" occurs when an individual's possessory interest in certain property is meaningfully interfered with. *Id*. The Supreme Court has

---

[12] It is undisputed that Surls has standing to contest the search of the vehicle. (Doc. No. 19 at 2; Doc. No. 23 at 2; Doc. No. 37, Tr. at 3-4.)

[13] "While it is true that the Fourth Amendment generally requires law enforcement officials to obtain a warrant before conducting a search, there is what has become known as the automobile exception to the warrant requirement." *United States v. Watts*, 329 F.3d 1282, 1284 (11th Cir. 2003). The automobile exception is quite simple: "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam).

[14] (Doc. No. 37, Tr. at 3.)

5

emphasized that the touchstone of the Fourth Amendment is reasonableness, "measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).  A warrantless search or seizure is presumptively unreasonable, unless an exception to the warrant requirement applies.  *United States v. Berrong*, 712 F.2d 1370, 1372 (11th Cir. 1983).  One such exception is the plain view doctrine.

It is "well settled that objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *Payton v. New York*, 445 U.S. 573, 586–87 (1980).  As the Supreme Court has explained, "if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

Under the plain view doctrine, an object may be seized without a warrant if (1) an officer is lawfully located in a place from which the object can be plainly viewed, (2) the officer has a lawful right to access the object, and (3) the object's incriminating nature is immediately apparent. *United States v. Folk*, 754 F.3d 905, 911 (11th Cir. 2014).  *See United States v. Susini*, 261 F. App'x 270, 273 (11th Cir. 2008) ("[I]t is well-settled that 'objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence.'") (quoting *Harris v. United States*, 88 S. Ct. 992, 993 (1968)).  For the incriminating character of an item to be

6

"immediately apparent," police must have probable cause to believe the object in plain view is contraband or evidence of a crime. *Dickerson*, 508 U.S. at 374-75. Probable cause exists if, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (en banc) (quotation omitted). "[A] police officer may draw inferences based on his own training and experience in deciding whether probable cause exists . . . ." *United States v. Reeves*, 604 F. App'x 823, 827 (11th Cir. 2015).

Considering the totality of the circumstances,[15] the undersigned finds that the plain view doctrine authorized the seizure of the firearm. There is no dispute that Surrett was lawfully located outside the vehicle from which Surls had just exited. Since Surls left the driver door to the vehicle open, Surrett was able to plainly view and access the item lodged in between the driver seat and the console. Because of Surrett's training and experience with firearms, he was able to identify the item as a firearm. Further, the firearm's incriminating nature was immediately apparent because Surrett knew that Surls was a convicted felon who was being arrested for a parole violation and Surrett reasonably believed that the firearm was in Surls' possession because he observed Surls seated in the driver seat of the vehicle immediately before Surls exited the vehicle. Surrett thus had

---

[15] Surls argued during the hearing that law enforcement "manipulated" the location of the firearm. (Doc. No. 37, Tr. at 53-57.) However, there is no evidence in the record that supports his argument. The record is devoid of facts which show that law enforcement discovered the firearm in another location and placed it between the console and driver seat. As such, the undersigned is not persuaded by Surls' argument.

7

probable cause to associate the firearm with criminal activity[16] and its seizure was proper under the plain view exception. *See Folk*, 754 F.3d at 912 ("A firearm that reasonably appears to be in the possession of a convicted felon qualifies as contraband – and is therefore subject to seizure under the plain view doctrine."); *United States v. Kendricks*, 758 F. App'x 687, 691 (11th Cir. 2018) (holding seizure of firearm was lawful under plain view doctrine where "firearm was evidence of a crime, like felon-in-possession"); *United States v. Coffell*, 720 F. App'x 521, 524-25 (11th Cir. 2017) (holding the seizure of the firearms, ammunition, and silencer during a lawful search for evidence of drug activity was permissible under the plain view doctrine).

Law enforcement's seizure of the firearm and subsequent search of the vehicle did not violate the Fourth Amendment.

## IV. CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that the motion to suppress (Doc. No. 19) be DENIED. It is further

ORDERED that the parties shall file any objections to the said Recommendation not later than **March 1, 2023**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties

---

[16] *See* 18 U.S.C. § 922(g) (prohibiting possession, "in or affecting commerce," of "any firearm or ammunition," by any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year").

are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the District Court's order based on unobjected-to-factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 14th day of February, 2023.

/s/ Jerusha J. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE